UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ERIN EDWARDS, | : | CIVIL ACTION NO. |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | **JURY TRIAL DEMANDED** |
| | : | |
| HERSHA HOSPITALITY MANAGEMENT, L.P.; | : | |
| MARRIOTT INTERNATIONAL, INC. D/B/A | : | |
| SPRINGHILL SUITES MARRIOTT MYSTIC | : | |
| WATERFORD; and MARRIOTT | : | |
| INTERNATIONAL, INC. D/B/A RESIDENCE | : | |
| INN BY MARRIOTT MYSTIC GROTON | : | |
| | : | JUNE 15, 2021 |
| Defendant. | : | |
| | : | |

## COMPLAINT

### JURISDICTION AND VENUE

1. This action arises under the Family Medical Leave Act, 29 U.S.C. § 2601 et seq.; and the Americans with Disabilities Act Amendments Act 42 U.S.C. § 12101 et seq.

2. The jurisdiction of this court is founded upon 28 U.S.C. §1331 (federal question) and the provisions of 28 U.S.C. §1343.

3. Venue is proper in the District of Connecticut pursuant to 28 U.S.C. §1391(b) in that the claims arose in this district and Plaintiff resides in this district.

4. Supplemental jurisdiction over Plaintiff's supplemental state law claims are invoked pursuant to 28 U.S.C. §1367 as the claims arise out of the same transaction and occurrences as Plaintiff's federal claims.

5. Costs, expert witness fees and attorney's fees are sought pursuant to 42 U.S.C. §1988.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

6. Plaintiff received a Notice of Right to Sue from the Equal Employment Opportunity Commission on March 18, 2021, and timely files this action.

**PLAINTIFF**

7. The Plaintiff, Erin Edwards ("Mr. Edwards" or "Plaintiff") is a natural person and resident of the State of Connecticut.

**DEFENDANTS**

8. The Defendant, Hersha Hospitality Management, L.P. ("HHM") is a limited partnership, headquartered in Philadelphia Pennsylvania, registered to conduct business within the State of Connecticut, and conducts substantial business in Connecticut as the owner/operator and/or manager of the Residence Inn by Marriott Mystic Groton, at 40 Whitehall Ave, Mystic, CT 06355 and Springhill Suites Marriot Mystic Waterford, located at 401 N. Frontage Rd. Waterford, CT 06385, which was managed by the Plaintiff, Mr. Edwards.

9. The Defendant, Marriott International, Inc. d/b/a Springhill Suites Marriott Mystic Waterford ("Springhill Suites") is a foreign corporation, registered to conduct business within the State of Connecticut, and conducts substantial business in Connecticut at 401 N. Frontage Rd. Waterford, CT 06385, where Plaintiff was employed.

10. The Defendant, Marriott International, Inc. d/b/a Residence Inn by Marriott Mystic Groton ("Residence Inn") is a foreign corporation, registered to conduct business within the State of Connecticut, and conducts substantial business in Connecticut at 40 Whitehall Ave, Mystic, CT 06355, where Plaintiff was employed.

**FACTUAL ALLEGATIONS**

11. At all times relevant, Brian DeFrancesco ("DeFrancesco") (no known disability) was Mr. Edwards' Direct Supervisor.

12. At all times, Mr. Edwards performed his work in a greater than satisfactory manner—no write-ups, no poor performance reviews, and no disciplinary reprimands.

13. Mr. Edwards' remarkably outstanding performance made him worthy of being nominated for "General Manager of the Year." In addition, he received glowing performance reviews with "Consistently Exceeds Expectations" final evaluations for the past two years prior to his termination, 2018 and 2019.

14. On January 7, 2020, Mr. Edwards attended a medical appointment at Lawrence + Memorial Hospital in order to undergo a C.T., echocardiogram of his chest, and a complete stress test.

15. Unfortunately, Mr. Edwards collapsed during the stress test, and according to his medical report, his heart stopped, requiring urgent cardiopulmonary resuscitation (CPR) for four minutes in order to save Edwards' life.

16. Immediately thereafter, Mr. Edwards' wife contacted Amanda Pulsifer ("Pulsifer") (no known disability), People Support Coordinator at HHM, and Edwards' supervisor, Mr. DeFrancesco, to inform them about Mr. Edwards' serious health condition and to request that they begin the process for Edwards to take job-protected leave under the Family and Medical Leave Act (FMLA) and short-term disability (STD) as well.

17. Dr. Roshanak Bagheri, MD ("Dr. Bagheri"), Mr. Edwards' treating cardiologist, indicated that Mr. Edwards' aortic valve needed to be urgently replaced due to severe stenosis.

18. On January 8, 2020, Mr. Edwards was transferred via ambulance to Hartford Hospital.

19. On January 13, 2020, Dr. David Yaffee, MD ("Dr. Yaffee") performed intensive aortic valve replacement surgery on Mr. Edwards.

20. That same day, on January 13, 2020, Ms. Pulsifer emailed Mr. Edwards his FMLA approval for the period of time beginning January 11, 2020, and ending on March 7, 2020— a total of eight (8) weeks.

21. On January 17, 2020, Dr. Yaffee released Mr. Edwards from Hartford Hospital.

22. However, at this moment, Mr. Edwards suffered from irregular and rapid heartbeat, night sweats, double-vision, headaches, and difficulty sleeping, which he made Dr. Yaffee aware of.

23. Dr. Bagheri then prescribed Mr. Edwards Coumadin, commonly referred to as a "blood thinner," among several other medications for his continuing serious health condition.

24. On February 4, 2020, Mr. Edwards attended a follow-up appointment with Dr. Yaffee, and once again, he expressed his medical concerns with respect to his heart and related ailments, as aforementioned.

25. Dr. Yaffee stated that if Mr. Edwards experienced double-vision, he should go to the emergency room immediately whenever this occurred.

26. Dr. Bagheri provided Mr. Edwards with a note clearing him to return to work on March 8, 2020, with a 10 pounds weight restriction until April 13, 2020.

27. On February 21, 2020, Edwards emailed his return to work medical note with medical restrictions to DeFrancesco and Pulsifer.

28. On Monday, March 9, 2020, Mr. Edwards returned to work to find both the hotels he oversaw had been poorly managed in his absence.

29. On March 12, 2020, DeFrancesco contacted Edwards via email to find out if he was interested in the layoff proposed by HHM to "reduce the management levels."

30. Mr. Edwards, in response, immediately informed DeFrancesco that he was not interested in a layoff.

31. During this same week, Mr. Edwards again experienced shortness of breath, double-vision, and severe headaches. Yet, Edwards a team player to the core, continued to perform the functions of his job, despite the pain the suffering he had been enduring.

32. Unfortunately, on March 13, 2020, Edwards had a severe episode of double-vision, his right eye blurred, and the shortness of breath was unbearable to the extent that he had to pull his vehicle over on Interstate 95 (I-95) for almost one hour.

33. Mr. Edwards was only able to call his wife, who immediately contacted Dr. Bagheri, and scheduled an appointment with Angela Thomas ("Thomas") APRN, Dr. Bagheri's Assistant.

34. Ms. Thomas, recognizing the severity of Mr. Edwards' symptoms, ordered that he had to be out of work immediately. Ms. Thomas wrote a letter removing Mr. Edwards from work, which was sent via email to Pulsifer and DeFrancesco.

35. On March 13, 2020, Ms. Pulsifer responded to Mr. Edwards' email stating that he had used eight weeks of FMLA leave and approved Edwards for an additional four weeks of job-protected leave, from March 14, 2020, through April 13, 2020 (four weeks).

36. On March 19, 2020, six days into his FMLA leave entitlement, despite being on job-protected FMLA leave, Edwards received communication from DeFrancesco that Edwards would be furloughed on March 20, 2020.

37. As of March 19, Mr. Edwards' remaining FMLA was tolled as he cannot exhaust FMLA leave during a furlough. The employee is not scheduled to work during a furlough – thus, they are on a forced leave of absence that usually is unpaid. As such, there is no work schedule from which to take FMLA leave. Moreover, according to the Department of Labor (DOL) furloughs cut off an employee's use of paid sick leave and paid FMLA leave.

38. Accordingly, on June 1, 2020, while still on furlough—**and with three weeks of remaining FMLA leave**, Mr. Edwards' employment was cut short, and he was informed that he was being terminated effective June 30, 2020, while still on FMLA leave.

39. On June 30, 2020, Edwards was wrongfully terminated from his position.

A.  **COVID-19 as Pretext to Cover up Discriminatory Animus and Retaliation.**

40. Defendant used COVID-19 as pretext to furlough Mr. Edwards on March 20, 2020, and then terminate his employment on June 30, 2020.

41. Tellingly, Mr. Edwards was actually being paid through his STD insurance so a furlough was unnecessary—except as a necessary step to set-up Edwards' eventual wrongful termination.

42. Defendants also clearly did not want to accommodate Edwards' disability and his accommodations at the workplace he would have required if he had continued to work.

43. Temporal proximity also supports that Mr. Edwards' termination appears to be a retaliatory response to the time off he was forced to take given his serious health condition and known disability.

44. Further undercutting the veracity of Defendants' adverse employment actions and Edwards purportedly being terminated due to "current economic conditions" on HHM's company website both of the hotels he managed were hiring after Mr. Edwards' termination.

45. Additionally, the Full-Service Residence Inn hotel managed by HHM had been closed for the past 2 months (April and May 2020) and reopened June 1, 2020.

## COUNT ONE

### INTERFERENCE WITH FMLA RIGHTS, IN VIOLATION OF 29 U.S.C.A. § 2615 AGAINST ALL DEFENDANTS

46. Plaintiff hereby incorporates paragraphs 1-45 with the same force and impact as if fully set forth herein.

47. Plaintiff was eligible and entitled to leave under the FMLA, due to serious health issues with his aortic valve and other causally related complications which qualified as serious health conditions, pursuant to C.F.R. §825.113.

48. The Defendant is considered an employer under the FMLA, employing over fifty employees.

49. On January 13, 2020, Ms. Pulsifer emailed Mr. Edwards his FMLA approval for the period of time beginning January 11, 2020, and ending on March 7, 2020— a total of eight (8) weeks.

50. Dr. Bagheri provided Mr. Edwards with a note clearing him to return to work on March 8, 2020, with a 10 pounds weight restriction until April 13, 2020.

51. On February 21, 2020, Edwards emailed his return to work medical note with restrictions to DeFrancesco and Pulsifer.

52. On March 12, 2020, DeFrancesco contacted Edwards via email to find out if he was interested in the layoff proposed by HHM and Mr. Edwards, in response, immediately informed DeFrancesco that he was not interested in a layoff.

53. During this same week, Mr. Edwards again experienced shortness of breath, double-vision, and severe headaches.

54. Unfortunately, on March 13, 2020, Edwards had a severe episode of double-vision, his right eye blurred, and the shortness of breath was unbearable to the extent that he had to pull his vehicle over on Interstate 95 (I-95) for almost one hour.

55. Angela Thomas APRN—Dr. Bagheri's Assistant ordered that he had to be out of work immediately, which was sent via email to Pulsifer and DeFrancesco.

56. On March 13, 2020, Ms. Pulsifer responded to Mr. Edwards' email stating that he had used eight weeks of FMLA leave and approved Edwards for an additional four

weeks of job-protected leave, from March 14, 2020, through April 13, 2020 (four weeks).

57. On March 19, 2020, six days into his FMLA leave entitlement, despite being on his FMLA, Edwards received communication from DeFrancesco that Edwards would be furloughed on March 20, 2020.

58. As of March 19, Mr. Edwards' remaining FMLA was tolled as he cannot exhaust FMLA leave during a furlough.  The employee is not scheduled to work during a furlough – thus, they are on a forced leave of absence that usually is unpaid.  As such, there is no work schedule from which to take FMLA leave.  Moreover, according to the Department of Labor (DOL) furloughs cut off an employee's use of paid sick leave and paid FMLA leave.

59. Accordingly, on June 1, 2020, while still on furlough—and with three weeks of remaining FMLA leave, Mr. Edwards' employment was cut short, and he was informed that he was being terminated effective June 30, 2020, while still on FMLA leave.

60. On June 30, 2020, Edwards was wrongfully terminated from his position.

61. The Defendant's interference with Plaintiff's FMLA rights, includes, but is not limited to:

   (a). Furloughing the Plaintiff six days into his FMLA leave entitlement; and
   (b). Terminating his employment during a time when he qualified for and should have been permitted to utilize FMLA job-protected leave.

62. As a result of the foregoing conduct, Plaintiff has suffered and will continue to suffer

damages, including but not limited to lost wages, fringe benefits, health insurance, emotional and psychological distress, stress, anxiety and loss of the ability to enjoy life's pleasures and activities.

63. Plaintiff's rights were violated under the FMLA, 29 U.S.C.A. § 2615, as described above.

64. Plaintiff is seeking damages as a result of Defendants' unlawful conduct.

## COUNT TWO

**RETALIATION,
FOR EXERCISING FMLA RIGHTS IN VIOLATION OF 29 U.S.C. § 2612(A)(1)
AGAINST ALL DEFENDANTS**

65. Plaintiff hereby incorporates paragraphs 1-64 with the same force and impact as if fully set forth herein.

66. Plaintiff was entitled to an FMLA medical leave and used job-protected leave due to his qualifying serious health condition.

67. The Defendants retaliation for Plaintiff asserting his FMLA rights, includes, but is not limited to:

    (a). Furloughing the Plaintiff six days into his FMLA leave entitlement; and

    (b). Terminating his employment during a time when he qualified for and should have been permitted to utilize FMLA job-protected leave.

68. Plaintiff engaged in protected activities pursuant to his rights under the FMLA.

69. The Defendant committed an adverse employment action against Plaintiff due to his engagement in protected activities.

70. As a result of the foregoing conduct, Plaintiff has suffered and will continue to suffer

damages, including but not limited to lost wages, fringe benefits, health insurance, emotional and psychological distress, stress, anxiety, and loss of the ability to enjoy life's pleasures and activities.

71. Plaintiff is seeking damages as a result of Defendants' unlawful conduct.

### COUNT THREE

### DISABILITY DISCRIMINATION, IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT AMENDMENTS ACT AGAINST ALL DEFENDANTS

72. Plaintiff hereby incorporates Paragraphs 1-45, with the same force and impact as if fully set forth herein.

73. Plaintiff's heart complications qualify as a disability under the ADAAA.

74. Despite being fully informed about Plaintiff's ADAAA disability, Defendant failed to engage in the mandatory "interactive process" to determine how to accommodate his known disability.

75. Defendant treated Plaintiff in a disparate manner in the terms and conditions of his employment based upon his disability, including, but not limited to the following:

   a) Furloughing the Plaintiff six days into his FMLA leave entitlement;
   b) Terminating his employment during a time when he qualified for and should have been permitted to utilize FMLA job-protected leave;
   c) Failing to engage in the ADAAA mandated "interactive process"; and
   d) Failing to Accommodate Plaintiff's known disability.

76. As a result of his wrongful discharge, Plaintiff has suffered and will continue to suffer damages including but not limited to lost wages, fringe benefits, health insurance, emotional and psychological distress, stress, anxiety, and loss of the ability to enjoy life's pleasures and activities.

77. Plaintiff seeks compensatory and punitive damages for Defendants' misconduct.

## COUNT FOUR

### FAILURE TO ACCOMMODATE.
### IN VIOLATION OF THE ADAAA - DISABILITY DISCRIMINATION AGAINST ALL DEFENDANTS

78. Plaintiff incorporates paragraphs 1-45 with the same force and impact as if fully set forth herein at length.

79. Plaintiff suffers from heart complications that qualify as a disability under the ADAAA.

80. Defendants failed to accommodate the Plaintiff's known disability, by, among other things:

    a) Failing to engage in the interactive process, despite knowing or reasonably should have known of Plaintiff's disability;

    b) Furloughing the Plaintiff six days into his FMLA leave entitlement; and

    c) Terminating his employment during a time when he qualified for and should have been permitted to utilize FMLA job-protected leave.

81. A leave of absence has been deemed a reasonable accommodation under the ADAAA.

82. As a result of his wrongful discharge, Plaintiff has suffered and will continue to suffer damages including but not limited to lost wages, fringe benefits, health insurance,

emotional and psychological distress, stress, anxiety, and loss of the ability to enjoy life's pleasures and activities.

83. Plaintiff seeks compensatory and punitive damages for Defendant's misconduct.

## COUNT FIVE

### RETALIATION, IN VIOLATION OF THE ADAAA AGAINST ALL DEFENDANTS

84. Plaintiff incorporates paragraphs 1-45 and 78-83, with the same force and impact as if fully set forth herein at length.

85. Among other factors that motivated Defendants' termination of Mr. Edwards was retaliation due to his request for accommodation and the need to take time off of work due to his disability.

86. As a result of his wrongful discharge, Plaintiff has suffered and will continue to suffer damages including but not limited to lost wages, fringe benefits, health insurance, emotional and psychological distress, stress, anxiety, and loss of the ability to enjoy life's pleasures and activities.

87. Plaintiff seeks compensatory and punitive damages for Defendant's misconduct.

**PRAYER FOR RELIEF**

Wherefore the Plaintiff prays that this court award:

1. Money damages;

2. Costs;

3. Punitive damages, attorney fees, and expert witness fees;

4. Pre-judgment interest

5. Trial by jury; and

6. Such other relief as the Court deems just, fair, and equitable.

                THE PLAINTIFF,
                ERIN EDWARDS

                By: _____/s/_____
                Michael C. McMinn (#*ct27169*)
                **THE MCMINN EMPLOYMENT LAW FIRM, LLC**
                1000 Lafayette Blvd., Suite 1100
                Bridgeport, CT 06604
                Tel: (203) 683-6007
                Fax: (203) 680-9881
                michael@mcminnemploymentlaw.com

                *COUNSEL FOR PLAINTIFF*